Slip Op. 19-99

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **DEACERO S.A.P.I. DE C.V. and DEACERO USA, INC.,** | |
| Plaintiffs, | |
| v. | Before: Claire R. Kelly, Judge |
| **UNITED STATES,** | Court No. 17-00183 |
| Defendant, | |
| and | |
| **NUCOR CORPORATION,** | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's remand redetermination in the administrative review of carbon and certain alloy steel wire rod from Mexico.]

Dated: August 1, 2019

Rosa S. Jeong and Irwin P. Altschuler, Greenberg Traurig, LLP, of Washington, DC, for plaintiffs, Deacero S.A.P.I. de C.V. and Deacero USA, Inc.

Elizabeth Anne Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Tara K. Hogan, Assistant Director, Jeanne E. Davidson, Director, and Joseph H. Hunt, Assistant Attorney General. Of Counsel on the brief was Emma Thomson Hunter, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Alan Hayden Price, Daniel Brian Pickard, and Derick G. Holt, Wiley Rein, LLP, of Washington, DC, for defendant-intervenor, Nucor Corporation.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") remand redetermination filed pursuant to the court's order in Deacero S.A.P.I. de C.V. v. United States, 42 CIT __, __, 353 F. Supp. 3d 1303, 1314–15 (2018) ("Deacero I"). See Final Results of Redetermination Pursuant to Ct. Remand [in Deacero I], Mar. 15, 2019, ECF No. 58-1 ("Remand Results").

In Deacero I, the court explained that Commerce failed to corroborate the 40.52% petition rate it assigned to respondent as total facts available with an adverse inference in the 2014–2015 administrative review of the antidumping duty ("ADD") order covering carbon and certain alloy steel wire rod from Mexico and remanded the decision to Commerce for further explanation or reconsideration. See Deacero I, 42 CIT at __, 353 F. Supp. 3d at 1312–14; see also Carbon and Certain Alloy Steel Wire Rod From Mexico, 82 Fed. Reg. 23,190 (Dep't Commerce May 22, 2017) (final results of [ADD] admin. review and final determination of no shipments; 2014–2015) ("Final Results") and accompanying Decision Mem. for [the] Final Results of 2014/15 [ADD] Admin. Review: Carbon and Certain Alloy Steel Wire Rod from Mexico, A-201-830, (May 15, 2017), ECF No. 21-5 ("Final Decision Memo"); Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine, 67 Fed. Reg. 65,945, 65,947 (Dep't Commerce Oct. 29, 2002) (notice of [ADD] orders) ("ADD Order").

Commerce explains that evidence it placed on the record on remand demonstrates the probative value of the assigned rate and satisfies the statutory corroboration

requirement.  See Remand Results at 4–7; see also 19 U.S.C. § 1677e(c).[1]  For the following reasons, Commerce's Remand Results do not comply with the court's remand order in Deacero I and its decision to apply the 40.52% AFA-rate to Deacero continues to be unsupported by substantial evidence.

## BACKGROUND

The court assumes familiarity with the facts of this case as discussed in the prior opinion, see Deacero I, 42 CIT at __, 353 F. Supp. 3d at 1306, and here restates the facts relevant to the court's review of the Remand Results.  Commerce's administrative review covered subject merchandise entered during the period of October 1, 2014, through September 30, 2015, and respondent Deacero S.A.P.I de C.V. ("Deacero" or "respondent").  See Initiation of Antidumping and Countervailing Duty Admin. Reviews, 80 Fed. Reg. 75,657, 75,658 (Dep't Commerce Dec. 3, 2015).  Pertinent here, in the final determination, Commerce used total facts available with an adverse inference ("AFA")[2] to calculate Deacero's final dumping margin, explaining that the revised section D cost

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.  Citations to 19 U.S.C. § 1677e, however, are to the unofficial U.S. Code Annotated 2018 edition, which reflects the amendments made to 19 U.S.C. § 1677e by the Trade Preferences Extension Act of 2015 ("TPEA").  See Trade Preferences Extension Act of 2015, Pub. L. No. 114-27, 129 Stat. 362 (2015).

[2] Parties and Commerce sometimes use the shorthand "adverse facts available" or "AFA" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination.  However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available."  See 19 U.S.C. § 1677e(a)–(b).  The phrase "total adverse inferences" or "total AFA" encompasses a series of steps that Commerce takes to reach the conclusion that all of a party's reported information is unreliable or unusable and that as a result of a party's failure to cooperate to the best of its ability, it must use an adverse inference in selecting among the facts otherwise available.

dataset Deacero submitted following the preliminary determination was unreliable and impeded the review process. See Final Decision Memo at 4–8, 12; see generally Deacero's Resp. Suppl. Sections A–E at Exs. Supp. D-6–7, PD 52, bar code 3490088-04 (July 21, 2016).[3] Pursuant to 19 U.S.C. § 1677e(b) and in accordance with its practice, Commerce chose the highest margin alleged in the 2001 petition—40.52%—as Deacero's final weighted-average dumping margin. See Final Decision Memo at 8–9 & n.33; Final Results, 82 Fed. Reg. at 23,190.

In Deacero I, the court sustained Commerce's decision to apply total-AFA to calculate Deacero's final weighted-average dumping margin.[4] See Deacero I, 42 CIT at __, 353 F. Supp. 3d at 1307–12, 1314. The court, however, determined that Commerce failed to corroborate the 40.52% AFA-rate it assigned to Deacero because it did not place any information demonstrating the rate's probative value, as required under 19 U.S.C. § 1677e(c)(1) and 19 C.F.R. § 351.308(d) (2015).[5] See id. at __, 353 F. Supp. 3d at 1314–15. As a result, the court remanded the corroboration issue for further explanation or reconsideration. Id.

---

[3] On September 5, 2017, Defendant filed indices to the public and confidential administrative records underlying Commerce's final determination. These indices are located on the docket at ECF Nos. 21-2–3. On April 1, 2019, Defendant filed indices to the public and confidential administrative records underlying Commerce's remand redetermination. These indices are located on the docket at ECF Nos. 61-2–3. Citations to administrative record documents in this opinion are to numbers Commerce assigned to such documents in the indices.

[4] Relatedly, the court did not reach challenges to Commerce's (1) decision to calculate a U.S. affiliate's general and administrative expenses without accounting for further manufacturing costs incurred, (2) failure to address certain clerical errors made in the preliminary determination, and (3) use of zeroing to calculate Deacero's dumping margin, because these issues became moot as a result of the court sustaining Commerce's decision to rely on AFA to calculate Deacero's rate. See Deacero I, 42 CIT at __, 353 F. Supp. 3d at 1314.

[5] Further citations to Title 19 of the Code of Federal Regulations are to the 2015 edition.

Commerce filed the Remand Results on March 15, 2019. On remand, Commerce placed copies of the Federal Register notice announcing the initiation of an ADD investigation into carbon and certain alloy steel wire rod from Mexico and the public version of the Wire Rod from Mexico Initiation Checklist on the record. See Remand Results at 6; Placement Wire Rod from Mexico Less Than Fair Value (LTFV) Notice of Initiation & Accompanying Public Version Wire Rod from Mexico Initiation Checklist on R., PRR 1, bar code 3790294-01 (Feb. 6, 2019) ("Initiation Notice"[6] and "Initiation Checklist"). Commerce continues to apply the 40.52% AFA-rate to Deacero and explains that the documents it placed on the record demonstrate that the rate was corroborated using independent sources during the pre-initiation analysis. See Remand Results at 6–7, 12–16. Deacero S.A.P.I. de C.V. and Deacero USA, Inc. (collectively "Plaintiffs") argue that Commerce did not satisfy the statutory corroboration requirement because it did not show that the 40.52% AFA-rate has probative value and is reliable and relevant. See [Pls.'] Comments Opp'n [Remand Results] at 6–14, May 6, 2019, ECF No. 64 ("Pls.' Comments"). Plaintiffs also contend that it would be "futile" for this court to remand the corroboration issue to Commerce for reconsideration and request this court to instruct Commerce to choose Deacero's weighted-average dumping margin from among the rates calculated for Deacero in the investigation or any of the prior administrative reviews of the ADD Order. Id. at 14–17. Defendant-Intervenor, Nucor Corporation ("Nucor") filed

---

[6] The Federal Register notice announcing the initiation is also available at Carbon and Certain Alloy Steel Wire Rod From Brazil, Canada, Egypt, Germany, Indonesia, Mexico, Moldova, South Africa, Trinidad and Tobago, Ukraine, and Venezuela, 66 Fed. Reg. 50,164 (Dep't Commerce Oct. 2, 2001) (notice of initiation of [ADD] investigations).

comments supporting the agency's position.  See Def.-Intervenor [Nucor]'s Comments [Remand Results] at 4–10, May 7, 2019, ECF No. 66 ("Nucor's Comments").

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c) (2012). Commerce's antidumping determinations must be in accordance with law and supported by substantial evidence.  19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'"  Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

Plaintiffs argue that Commerce's corroboration analysis does not rely upon independent sources and fails to demonstrate that the petition rate is probative, relevant, and reliable.  Pls.' Comments at 6–14.  Plaintiffs also argue that the determination on remand evidences "that [Commerce] is incapable of corroborating its chosen AFA rate" and ask the court to issue a remand order with specific instructions that Commerce assign, as Deacero's rate, a rate calculated in any prior segment of this proceeding.  Id. at 14–17.  Defendant responds that Commerce verified the rate's reliability, relevancy, and probative value during the pre-initiation analysis, that the independent sources Commerce relied upon are reflected in the Initiation Notice and Initiation Checklist, and that respondent should not be allowed to choose its own rate via this court's remand

instructions.  Def.'s Resp. to Comments [Remand Results] at 8–15, June 20, 2019, ECF No. 67 ("Def.'s Comments").  For the following reasons, Commerce's Remand Results do not comply with the court's remand order, are unsupported by substantial evidence, and are remanded for further explanation or reconsideration consistent with this opinion.

Whenever Commerce relies on information not "obtained in the course of an investigation or review," such as allegations in a petition, it is relying on secondary information and is required, "to the extent practicable, [to] corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c)(1);[7] see also Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-465, vol. 1, at 870 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4199 ("SAA") (providing the same); 19 C.F.R. § 351.308(c)(1)(i) (listing, as a source of "[s]econdary information," information derived from "[t]he petition").  Commerce corroborates secondary information by "examin[ing] whether the secondary information to be used has probative value."  19 C.F.R. § 351.308(d); see also SAA at 870, 1994 U.S.C.C.A.N. at 4199 (tying corroboration to whether the secondary information has probative value).

Examples of independent sources include "published price lists, official import statistics and customs data, and information obtained from interested parties during the instant investigation or review."  19 C.F.R. § 351.308(d); SAA at 870, 1994 U.S.C.C.A.N. at 4199 (listing the same sources).  The independent nature of a source depends on who

---

[7] Since the passage of the TPEA, Commerce is no longer required to link the selected adverse rate to the respondent's commercial reality.  19 U.S.C. § 1677e(d)(3)(B).  Commerce, however, is still required to demonstrate, "to the extent practicable," the probative value of the secondary information it is using.  19 C.F.R. § 351.308(d).

originates the information provided and not by who files the information.  KYD, Inc. v. United States, 607 F.3d 760, 765 (Fed. Cir. 2010) (concluding that import statistics, price quotations, and affidavits from officials in a third-party company, attached to an antidumping petition, were independent sources).

The court must base its review of Commerce's corroboration upon the record of the proceeding, which consists of

> (i) a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding, including all governmental memoranda pertaining to the case and the record of ex parte meetings required to be kept by section 1677f(a)(3) of this title; and
>
> (ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register.

19 U.S.C. § 1516a(b)(2)(A)(i)–(ii).  Commerce's regulations require it to maintain "the official record of each segment of the proceeding[ ]" that will form the record reviewed by this Court.  19 C.F.R. § 351.104(a)(1).  The official record will contain,

> all factual information, written argument, or other material developed by, presented to, or obtained by the Secretary during the course of a proceeding that pertains to the proceeding. . . . [and] government memoranda pertaining to the proceeding, memoranda of ex parte meetings, determinations, notices published in the Federal Register, and transcripts of hearings. The official record will contain material that is public, business proprietary, privileged, and classified.

Id.

Here, and in line with its practice, Commerce selected the highest margin alleged in the petition as Deacero's AFA-rate.  See Final Decision Memo at 8 (citations omitted).  In Deacero I, the court determined Commerce did not corroborate Deacero's rate because it failed to place any information demonstrating the rate's probative value, as

required under 19 U.S.C. § 1677e(c)(1) and 19 C.F.R. § 351.308(d), on the record. See Deacero I, 42 CIT at __, 353 F. Supp. 3d at 1313–14. Specifically, the court stated that the statutory requirement for Commerce to corroborate the assigned rate "to the extent practicable," 19 U.S.C. § 1677e(c)(1), "at a bare minimum, requires Commerce to produce the documents it relied upon to analyze why the chosen rate is probative." Id. at __, 353 F. Supp. 3d at 1314.

In response, on remand, Commerce supplemented the administrative record with a copy of the Initiation Notice and Initiation Checklist. See Remand Results at 6. Commerce, however, did not rely upon the Initiation Notice and Initiation Checklist to corroborate Deacero's rate. The Initiation Notice and Initiation Checklist present the conclusions Commerce reached and describe the evidence available to Commerce at the time of the pre-initiation analysis. The Initiation Checklist, in addition to redacting all confidential information, merely marks off documents supportive of initiating an investigation into the subject merchandise and is evidence of the allegations that the petitioners successfully made. See Initiation Checklist at 13–16.

Indeed, Commerce's explanation reveals that it merely drew on the conclusions stated in the Initiation Notice and Initiation Checklist to conclude that the 40.52% AFA-rate is probative and is reliable and relevant. Commerce explains that during the pre-initiation stage it looked at various independent sources, provided either in the petition itself or solicited through supplemental requests, and that these documents show the 40.52% AFA-rate's probative value. See Remand Results at 6–7. Specifically, it explains that the rate is probative because

Court No. 17-00183                                                                                           Page 10

> [d]uring our pre-initiation analysis, we examined the information used as the basis of export price (EP) (i.e., affidavits of U.S. prices offerings for a Mexican wire rod manufacturer), and normal value (NV), (i.e., constructed value calculated based on U.S. producers' cost of producing carbon and steel wire rod, adjusted for known differences between the Mexican and U.S. markets), in the Petition, and the calculations used to derive the alleged margins.

Id. at 6 (citing Initiation Checklist at 13, 26).  Yet, none of the documents Commerce references to support its calculations as to export price and normal value have been placed on the record.[8]  Further, Commerce contends that because it examined the adequacy and accuracy of the evidence resulting in the 40.52% rate in its pre-initiation analysis, absent evidence to the contrary, the rate continues to be reliable as an AFA rate.  Id. at 7.  The court cannot assess the reasonableness of the preceding statement because the documents which Commerce relied upon in making it are not on the record.

Relatedly, Commerce's explanation that because it corroborated the 40.52% AFA-rate during the pre-initiation stage, the rate continues to be corroborated now, Remand Results at 6–7, 13–14, is conclusory.[9]  If the obligation to demonstrate the probative value

---

[8] The statutory framework governing initiation requires petitioner(s) to allege all elements necessary for the imposition of ADDs and to support such allegations with information reasonably at its disposal.  19 U.S.C. §§ 1673a(b)(1), 1673.  Commerce, however, is not required to confirm the probative nature of the information underlying the petition at the initiation stage.  See 19 U.S.C. § 1673a(b)(1); 19 U.S.C. § 1673a(c)(1) (explaining that the agency will examine the adequacy and accuracy of the evidence in the petition to determine whether elements necessary to impose a duty were met); see also SAA at 870, 1994 U.S.C.C.A.N. at 4199 (recognizing that secondary information derived from the petition is not de facto reliable because "it is based on unverified allegations[.]").  Commerce, therefore, cannot now claim that it corroborated the 40.52% rate, applied as AFA to respondent here, by pointing to the conclusions of the pre-initiation analysis, but not the independent sources upon which the rate's probative value is based.

[9] Further, to the extent that Commerce and Defendant-Intervenor interpret the court's remand order as simply requiring Commerce to produce the documents cited in the final determination's

(footnote continued)

of a rate is to have any meaning, Commerce must do more than refer to conclusions of calculations it carried out previously. Commerce has not complied with the court's instructions that it "produce the documents it relied upon to analyze why the chosen rate is probative[,]"[10] Deacero I, 42 CIT at __, 353 F. Supp. 3d at 1314, and its corroboration analysis continues to be unsupported by substantial evidence.

Defendant argues that it is not necessary for Commerce to place evidence underlying the Initiation Notice and Initiation Checklist on the administrative record because Commerce's remand redetermination does not directly cite to the supporting evidence. Def.'s Comments at 9 n.3. The question is not what Commerce cited in the Remand Results, but what it relied upon to analyze whether the rate was probative, reliable, and relevant. Defendant also claims that Commerce corroborated the 40.52% AFA-rate using independent sources at its disposal. Id. at 12–13. The independent sources may be embedded in the pre-initiation analysis; however, the pre-initiation

---

corroboration analysis, see Remand Results at 5–6; Nucor's Comments at 4–5; see also Final Decision Memo at 8–9, both read the Deacero I decision too narrowly. See generally Deacero I, 42 CIT at __, 353 F. Supp. 3d at 1312–14. Deacero I did not rule that Commerce met the statutory corroboration requirement and that, on remand, Commerce simply needed to produce documents cited to in the final determination. Id. at __, 353 F. Supp. 3d at 1314. In fact, the court clearly stated that "Commerce did not corroborate the AFA rate and therefore, its decision to rely on the petition rate is remanded for further explanation or reconsideration consistent with this opinion." Id.

[10] Although petitioner Nucor placed excerpts of the public version of the petition on the record, along with several underlying exhibits, [Nucor's] Draft Comments on Remand, PRR 4, bar code 3793273-01 (Feb. 13, 2019), nowhere in the Remand Results does Commerce identify which exhibits pertain to its corroboration analysis.

analysis itself is not an independent source.[11]  Defendant cannot claim that Commerce used independent sources to corroborate the 40.52% AFA-rate, as applied to Deacero, Def.'s Comments at 10–13, without identifying which independent sources Commerce relied upon, placing all such sources on the record, and explaining how such sources corroborate the AFA rate.

Finally, in its second remand order, the court will not, as Plaintiffs request, provide explicit instructions to Commerce to abandon its chosen 40.52% AFA-rate and instead, select an AFA-rate from among the rates previously calculated for Deacero in a prior segment of this proceeding.  Pls.' Comments at 14–17.  The facts and circumstances of this case do not warrant such a response.  Commerce has not shown that it is unwilling or unable to corroborate the 40.52% AFA-rate or comply with the court's orders.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Commerce's decision to rely on the 40.52% AFA-rate is remanded for further explanation or reconsideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the court within 90 days of this date; and it is further

---

[11] To the extent that Plaintiffs challenge the independence of sources Commerce relied upon in its pre-initiation analysis because of who submitted information and when, see Pls.' Comments at 10–11, the challenge fails.  As explained above, independence is a measure of who generates the information contained in the document, not who files it and during which proceeding.  Therefore, a document filed by a domestic party and attached to a petition may constitute an independent source.  However, because Commerce did not produce the sources underlying the pre-initiation analysis, the court cannot opine on whether such sources are independent.

Court No. 17-00183                                                                                              Page 13

**ORDERED** that the parties shall have 30 days thereafter to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file their replies to comments on the remand redetermination.


                                                       /s/ Claire R. Kelly
                                                     Claire R. Kelly, Judge

Dated: August 1, 2019
      New York, New York